[File No. 6042.]

ALICE TWENGE, Respondent, v. THORVALD STAVENS and Ole K. Livedalen, as Administrators of the Estate of Gunder H. Stavens, Deceased; and LILLIE DIGNESS, Helen Livedalen, Thorvald Stavens, and Arthur Mehus, Sole Heirs at Law and Next of Kin of Gunder H. Stavens, Deceased, Appellants.

(245 N. W. 464.)

2

Opinion filed May 27, 1932.   On rehearing December 5, 1932.

*Theodore Kaldor* and *Henry Leum,* for appellants.

*Lemke & Weaver,* for respondent.

4

BIRDZELL, J.  This action was brought to quiet title to lot 5, block 1, Kaasa's subdivision of lot 3 in block 1, Berg's First addition to the city of Northwood, Grand Forks county, North Dakota.  From a judgment quieting title in the plaintiff the defendants have appealed,. demanding a trial de novo in this court.  The facts are as follows:

By deed dated June 20, 1929, and recorded August 22, 1929, P. P. Twenge deeded to the plaintiff the property in question.  The property is residence property and was bought by P. P. Twenge in 1908. It was occupied as his residence until it was deeded to the plaintiff, his daughter, as above noted, and since the transfer to the plaintiff P. P. Twenge has paid rent to her.  At about the time of purchasing the property, in October, 1908, P. P. Twenge borrowed from one Gunder Stavens, since deceased, $1,000 securing the same by giving a mortgage on the property in question, due in two years at 10 per cent interest.  Later Twenge had two other loan transactions with Stavens whereby in the spring of 1910 he borrowed $2,000 secured by mortgage, due in five years at 6 per cent interest, on a quarter section of land near Emerado in Grand Forks County, and in 1912 he borrowed $3,500, secured by property in Dunnell, Minnesota, due in three years. In the spring and summer of 1916 these mortgages were foreclosed.

The property in each instance was bid in by Stavens and in due course of time sheriff's deeds were issued to him. Stavens died in June, 1924, and the property in question was administered and distributed as a part of his estate, the estate being closed on January 26, 1927.

P. P. Twenge, a witness for the plaintiff, testified that in March, 1917, before the period had expired for redeeming the properties foreclosed, he had an understanding with Stavens whereby the three properties should run to sheriff's deed in favor of Stavens and that he would have a right to redeem at any time he desired by paying the mortgages and interest. He further testified that the land near Emerado was sold on April 16, 1920, for $4,800 and that the Minnesota property, known as the Dunnell property, was sold on April 20, 1920, for $10,000 and that in each instance Stavens received the money. He figured there was due to Stavens on the Emerado property, allowing him interest up to April 22, 1920, the total sum of $3,631.39, and on the Dunnell property the sum of $6,876.90, and that the balance of the $14,800 received by Stavens for these two properties, or $4,291.71, was to be applied on his indebtedness, and that he had thus paid Stavens in full, including $2,487.80 he then owed on the Northwood property. He also testified that Stavens was indebted to him for $500, money advanced, and for $700 of moneys earned and for interest.

No claim was filed against the estate of Gunder Stavens within the statutory time for filing claims for any moneys claimed to have been owing by the deceased to Twenge, but on September 9, 1925, several months after the expiration of the period for filing claims, a claim was presented to the administrators of the estate for a balance of $6,-353.91, on which there was the following notation concerning the property in question: "On Apr. 22, 1920, paid in full $2,487.80 for Lot Five (5) in Block One (1), of Kaasa's Subdivision of Lot Three (3) in Block One (1), in Berg's First Addition to Northwood City, Grand Forks County, North Dakota, for which up to date no deed has ever been furnished." According to this verified claim, in September, 1925, there was due to Twenge from the Stavens estate $6,353.91 and a clear title to the property in question for which Twenge had paid on April 22, 1920, to redeem from the sale $2,487.80. Thus, in the absence of a deed, according to this claim, the estate was owing Twenge in 1925 the sum of $8,841.71. But on the trial of this action the wit-

ness Twenge presented a written statement of his account with Stavens, which shows that Stavens had received from him or on his account, with interest on the balance in his favor, exactly $20,000. From this he subtracts the amount of the foreclosed mortgages as represented by the sheriff's deeds, with interest to a given date in April, 1920, when each of the two properties was sold, and as to the Northwood property, which was not sold, to April 22, 1920, plus taxes paid of $500 and $60 cash received from Stavens; making a total due to Stavens of $13,466.09 and a balance in favor of Twenge as of July 12, 1925, of $6,533.91. Charging interest at 6 per cent to July, 1929, the statement shows a total balance due Twenge in July, 1929, after paying for the Northwood property, of $8,092.91. Thus, there is a discrepancy between the claim presented to the administrators and the account sought to be proved upon the trial. This is largely explained by his testimony which shows that the payment to redeem the Northwood property was through the application of the proceeds of the other sales, which was not shown on the verified claim.

Obviously, the claim against the estate was properly disallowed on account of failure to file the same within the time limited in the notice to creditors. Compiled Laws 1913, §§ 8734 and 8736. Had Twenge proceeded within the time for filing claims he could not have established in probate court a right to a conveyance from the administrators, because, under § 8792 of the Compiled Laws of 1913, an executor or administrator may be directed to make a proper conveyance only when the deceased was "bound by contract in writing to convey" and dies before making the conveyance. Twenge had no written contract.

So, the sole question is whether or not this record shows that Twenge had the right to and did in fact redeem the property in question in April, 1920. The only evidence that there was such a redemption is that furnished by Twenge himself. He testified to an agreement whereby he forebore to redeem in March, 1917, in reliance upon Stavens' promise that if he, Twenge, would allow the foreclosures to go to sheriff's deed, he could redeem thereafter by paying the amount with interest. All three foreclosures went to deed within a few months from that time and there is no evidence that anything whatsoever was done toward effecting a redemption for more than three years there-

after, during all of which time Stavens held the property together with whatever benefits and burdens were incident to the ownership. He sold two of the properties in April 1920, and, though he lived more than four years thereafter and had business relations with Twenge almost throughout the whole period, there is no evidence whatsoever in the record that Twenge ever demanded from Stavens an accounting of the proceeds of the sales or any deed to the Northwood property. There is not even any testimony that at any time during Stavens' lifetime Twenge notified him of any election to exercise his claimed right to redeem. So far as Twenge's testimony is concerned—and there is no other testimony on this subject—he was in just as good a position at the time of Stavens' death to claim that he had redeemed the two properties which were sold and to file a claim for the surplus in cash as he was to claim that the property in question had been redeemed. (His delayed claim rather evidences such a determination.) In fact, he was in better position to make such claim because more than sufficient moneys had been received from each of these properties to effect a redemption of them; whereas, nothing was received from the property in question, nor was any direction given to apply any surplus toward its redemption. Adding the taxes paid by Stavens and his administrators the amount invested in it might well have exceeded its value. According to the agreement Twenge had an *option* to redeem and he could have exercised it separately as to each property. In our opinion the testimony fails to show that he exercised it as to the property in question.

Furthermore, assuming the existence of a contract as shown by Twenge's testimony, we are of the opinion that it must be construed to give to Twenge an option to redeem within a reasonable time after the property went to sheriff's deed and that the lapse of three years or more thereafter without taking any steps to redeem is an unreasonable period. A circumstance showing why the option should be exercised within a reasonable period is found in the fact that Twenge includes in his claim against Stavens $2,520 as income from the Dunnell property between the sheriff's deed and the sale. Since the option is unilateral and the title owner is bearing the risks of ownership, justice requires a reasonable limitation as being within the contemplation of the parties, rather than a perpetual right with an unlimited range for speculation.

We do not overlook the contention of counsel for the respondent that inasmuch as his client and her predecessor have been in constant possession of the property without paying rent to Stavens, his administrators or heirs, laches are not to be invoked against them, though the action is begun more than twelve years after the sheriff's deed and more than nine years after the redemption claimed. 21 C. J. 230. We do not base our opinion on laches but rather on what we deem a reasonable construction of the contract and the unsatisfactory proof as to the exercise of the option. However, in order to establish that the option as to the property in question was exercised, the plaintiff had first to establish that it was exercised as to the other two properties, for the proceeds of their sale constitute the claimed source of the redemption money.

For the reasons stated, the judgment must be reversed and judgment entered quieting title in the defendants according to the decree of distribution.

CHRISTIANSON, Ch. J., and NUESSLE and BURR, JJ., and HUTCHINSON, Dist. J., concur.

Mr. Justice BURKE did not participate; Hon. WM. H. HUTCHINSON, Judge of the Third Judicial District, sitting in his stead.

(On Rehearing.)

BIRDZELL, J. In response to the plaintiff's petition, a rehearing was ordered and the case was reargued. After such reargument and reconsideration of the record and the foregoing opinion, the court is constrained to the view that the disposition of the appeal according to the original opinion is correct, and it therefore adheres to such opinion.

CHRISTIANSON, Ch. J., and BURR and NUESSLE, JJ., and HUTCHINSON, Dist, J., concur.